IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONALD R. YOUNG,

                Plaintiff,

                Civil No. 06-516-ST

          v.

                FINDINGS AND
                RECOMMENDATION

MICHAEL J. ASTRUE,[1]
Commissioner, Social Security
Administration,

                Defendant.

—————————————————————————

STEWART, Magistrate Judge:

      Plaintiff, Donald Young ("Young"), seeks judicial review of the Social Security

Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB")

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of the Social Security Administration.  He is substituted as the defendant in this action pursuant to FRCP 25(d)(1) and 20 USC § 405(g).

1 - FINDINGS AND RECOMMENDATION

under Title II of the Social Security Act.  This court has jurisdiction under 42 USC §§ 405(g)

and 1383(c).  The Commissioner's decision should be reversed and remanded for further

proceedings.

## <u>BACKGROUND</u>

Born in 1956, Young has a post-graduate education.  Tr. 59, 115.[2]  He worked as an

elementary school teach until August 2001 when he became an elementary school principal.

Tr. 111.  In June 2001, Young suffered from acute labryinthitis which caused severe vertigo,

nausea and vomiting.  Tr. 313.  Although his symptoms gradually improved, he quit working on

December 20, 2003, due to a constant state of light-headedness, balance problems, fatigue,

stress, difficulty concentrating, and depression.  Tr. 82, 110.  Based on the loss of function of his

right vestibular nerve, Young alleges that he suffers from a disability due to "vertigo associated

with disturbance of labyrinthine-vestibular [nerve] function" and oscillopsia.[3]  Tr. 82.

Young applied for DIB on March 18, 2004, alleging disability since December 20, 2003.

Tr. 59-61.  His application was denied initially and upon reconsideration.  Tr. 48-50, 52-56.  A

hearing was held before an Administrative Law Judge ("ALJ") on March 2, 2005.  Tr. 340-74.

On June 24, 2005 the ALJ found Young not disabled.  Tr. 17-28.  The Appeals Council denied

review of Young's application on February 14, 2005, making the ALJ's decision the

Commissioner's final decision.  Tr. 6-8.  Young appeals that decision.

///

---

[2] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer June 12, 2006 (Docket #4).

[3] Oscillopsia is defined as "abnormal jerky eye movements . . . [which] create a subjective sensation that the environment is oscillating."  Kenneth N. Anderson *et al*, *Mosby's Medical, Nursing, & Allied Health Dictionary* (5th ed. 1998).

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act.  20 CFR § 404.1520; *Bowen v. Yuckert*, 482 US 137, 140-42 (1987).  Young challenges the ALJ's evaluation of the evidence at step three and his conclusions at step five.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If so, the claimant is not disabled.  20 CFR § 404.1520(4)(I).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12 month duration requirement.  20 CFR §§ 404.1509, 404.1520(4)(ii).  If the claimant does not have such a severe impairment, he is not disabled.  *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations.  20 CFR § 404.1520(4)(iii).  If the impairment is determined to meet or equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC").  The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his  impairments.  20 CFR § 404.1520(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).  The ALJ uses this information to determine if the claimant can perform past relevant work at step four.  20 CFR § 404.1520(a)(4)(iv).

3 - FINDINGS AND RECOMMENDATION

If the claimant cannot perform past relevant work, the ALJ must determine if the claimant can perform other work in the national economy at step five. *Yuckert*, 482 US at 142; *Tackett v. Apfel*, 180 F3d 1094, 1098 (9th Cir 1999); 20 CFR § 404.1520(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F3d at 1098. If the process reaches step five, the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's residual functional capacity. *Id.* If the Commissioner meets this burden the claimant is not disabled. 20 CFR § 404.1566.

## THE ALJ'S FINDINGS

The ALJ found that Young's vestibular disorder and major depressive disorder and anxiety are "severe" impairments. Tr. 27. However, he found Young "generally but not totally credible" regarding his alleged impairments and their impact upon his ability to work. Tr. 25, 27. As a result, the ALJ assessed Young's RFC as follows:

> The claimant retains the residual functional capacity to perform the exertional demands of a reduced range of medium and light exertional level work. Although generally not limited in lifting, due to his needs to seek balance because of his vestibular disorder, the claimant needs to avoid carrying more than 20 lbs. He needs to avoid lifting items that are large enough to obscure his vision, including downward vision. He needs to avoid negotiation of rough ground. The claimant should not be on his feet more than 20 minutes at a time. He needs to avoid rapid postural changes, such as twisting. He needs to minimize repetitive head movement. He needs to avoid hazards, particularly balance hazards. The claimant is intolerant of loud noises. Reading is limited to an occasional basis. Climbing of ladders or scaffolds is precluded. Stooping, crouching, bending over, crawling, kneeling, and climbing of ramps or stairs is limited to an occasional basis. The claimant may need to touch a reference point during these activities. The claimant is unable to maintain consistent or prolonged concentration on detailed or complex material. He should not work around crowds. Interpersonal exchanges should be either superficial or occasional.

4 - FINDINGS AND RECOMMENDATION

*Id.*

Based on this RFC and the testimony of a vocational expert, the ALJ concluded that

Young could not return to his past relevant work as a teacher and principal, but retains the ability

to perform significant work in the national economy as, for example, a file clerk, telephone

solicitor, and survey worker.  Tr. 27-28.  The ALJ therefore found Young not disabled under the

Act at any time through the date of his decision.  Tr. 28.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner

applied proper legal standards and the findings are supported by substantial evidence in the

record.  42 USC § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir

2004).  This court must weigh "both the evidence that supports and detracts from the

Commissioner's conclusion."  *Magallanes v. Bowen*, 881 F2d 747, 750 (9th Cir 1989).  The

reviewing court "may not substitute its judgment for that of the Commissioner."  *Edlund v.

Massanari*, 253 F3d 1152, 1156 (9th Cir 2001).  Variable interpretations of the evidence are

insignificant if the Commissioner's interpretation is a rational reading.  *Magallanes*, 881 F2d at

750; *see also Batson*, 359 F3d at 1193.

## FINDINGS

Young contends the ALJ improperly assessed his credibility, improperly rejected his

testimony and that of a lay witness, and improperly evaluated medical evidence.

## I.     Young's Credibility

The ALJ found that Young's "allegations regarding his limitations are generally but not

totally credible."  Tr. 27.  In reaching this conclusion, the ALJ reasoned as follows:

> The claimant's allegations are generally credible, but his legal
> conclusions regarding the SSA disability are not accepted for the
> reasons set forth in the body of the decision.  The claimant's
> implied hypothesis that he would need to take frequent breaks at
> any occupation appears to be based primarily in the context of his
> former complex activities as a dedicated principal rather than
> considering simpler occupations.

Tr. 25.

Young contends this is an insufficient credibility determination.

Once a claimant shows an underlying impairment exists which could create some degree of the claimed symptoms, and if no evidence of malingering exists, the ALJ "can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  *Smolen v. Chater*, 80 F3d 1273, 1284 (9th Cir 1996).  The ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995).  In making credibility findings, the ALJ may consider the claimant's treatment history and observations of physicians regarding symptoms.  *Smolen*, 80 F3d at 1284.  The ALJ may also consider the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations.  *Id.* Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant.  *Id*.

Due to the lack of any evidence of malingering, the ALJ was required to offer specific, clear and convincing reasons for finding Young not credible.  However, the ALJ did not identify any reasons to reject the Young's "legal conclusions," but simply referred to "the reasons set forth in the body of the decision."  Tr.  25.  The Commissioner argues that the ALJ properly

6 - FINDINGS AND RECOMMENDATION

determined that Young was not credible because his complaints exceeded the objective medical evidence in the record.  The Commissioner also points to other evidence supporting the ALJ's credibility finding, including Young's report that he planned to retire in 2004 and a note by his treating psychiatrist that "compliance has been a problem."  Tr. 22, 242.  However, the ALJ did not clearly identify such reasons in his credibility analysis.  The Ninth Circuit has explicitly held that "it was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss."  *See Connett v. Barnhart*, 340 F3d 871, 874 (9th Cir 2003); *Ceguerra v. Sec'y of HHS*, 933 F2d 735, 738 (9th Cir 1991) (ALJ must make specific findings to reject witness testimony).

The ALJ specifically rejected only one of Young's complaints that he needed to take frequent breaks for the reason that it was "based primarily in the context of [Young's] former complex activities as a dedicated principal rather than considering simpler occupations."  Tr.  25.  Substantial evidence does not support that reason.  Young explained that due to his vestibular disturbance and fatigue, he needs to take frequent breaks in all of his daily activities since he stopped working, including simple tasks, and not just the complex tasks of a principal.  Tr. 130-31, 134-35, 138, 344-67.  Young also complained about a myriad of other symptoms, including problems with concentration, reading and staying awake, which the ALJ did not address in his credibility analysis.  Tr. 352, 356.

Because the ALJ's credibility determination as to the extent of Young's symptoms is not supported by clear and convincing reasons, it should not be sustained.

///

///

7 - FINDINGS AND RECOMMENDATION

## II.    Medical Source Statements

Young contends the ALJ failed to appropriately evaluate the opinion of his treating physician, Alexander J. Schleuning, M.D., at step three in the sequential proceedings.  Young does not challenge the ALJ's review of the other medical evidence.

### A.    Legal Standard

Generally, a treating physician is accorded greater weight than an examining physician. *Edlund*, 253 F3d at 1157.  If the opinion of a treating or examining physician is contradicted, then an ALJ need only set out specific and legitimate reasons supported by substantial evidence. *Bayliss v. Barnhart*, 427 F3d 1211, 1216 (9th Cir 2005).  This evaluation must "set out a detailed and thorough summary of the facts and conflicting clinical evidence." *Magallanes*, 881 F2d at 751.

Step three determinations must furthermore be based upon medical evidence.  In no case will the claimant's description of symptoms alone be sufficient to establish the presence of a physical or mental impairment.  20 CFR § 404.1529(b); SSR 86-8, *4, 1986 WL 68636.

### B.    Dr. Schleuning's Medical Opinion

Dr. Schleuning, an otolaryngologist, treated Young for his vestibular nerve disorder and resultant symptoms between November 2001 and June 2004.  Tr. 304, 336, 343.  The ALJ reiterated Dr. Schleuning's clinical findings in detail and concluded that they did not establish that Young's vestibular disorder met or equaled Listing 2.07.  Tr. 20.  Listing 2.07 provides as follows:

> 2.07  Disturbance of labyrinthine-vestibular function (including Meniere's disease), characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing.  With both A and B:

A.  Disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and

B.  Hearing loss established by audiometry.

20 CFR Pt. 404, Subpart P, App. 1, § 2.07.

In considering whether a claimant meets or equals a listing at step three, the ALJ must explain his evaluation of alternative tests and the combined effects of impairments. *Marcia v. Sullivan*, 900 F2d 172, 176 (9th Cir 1990). Whether a claimant meets a listing requires a distinct analysis from whether a claimant equals a listing.

An ALJ is not bound by a physician's opinion that a claimant meets a listing. SSR 96-6P, *3, 1996 WL 374180. Regardless, in his letter opinion dated February 23, 2005, Dr. Schleuning states that Young met only subsection A of Listing 2.07. Tr. 327. Listing 2.07 requires a "progressive hearing loss" and subsection B specifically requires "[h]earing loss established by audiometry." Dr. Schleuning addressed Young's hearing loss by stating that he has "had no significant hearing loss associated with the imbalance," had "multiple hearing tests that show a mild high-frequency dip but otherwise are normal," and the "hearing loss is probably unrelated to his present complaints and is quite mild." Tr. 326-27. In other words, he concluded that Young's mild hearing loss represents normal age-related loss and did not correlate to his vestibular disorder. Tr. 310, 327. The ALJ noted this distinction in his decision. Tr. 20.

A finding that a claimant meets a listing must be based upon medical evidence. 20 CFR § 404.1529(b); SSR 86-8, 1986 WL 68636. No physician of record suggests that Young's mild hearing loss corresponds to Listing 2.07. Tr. 224, 310, 327. DDS physicians specifically noted that "[I]t does not appear that he satisfies all the elements of the listing. There is no indication that he has a progressive hearing loss or tinnitus." Tr. 224. DDS listing determinations must be

given weight as expert opinions.  SSR 96-6p, *2-3, 1996 WL 374180.  Thus, the ALJ did not err

by finding, based on the record, that the Young failed to meet Listing 2.07 because his mild and

unrelated hearing loss failed to satisfy subsection B.

Even though Young does not meet subsection B for Listing 2.07, he contends that the

ALJ erred in concluding that his combined impairments failed to equal Listing 2.07.  Listing

equivalency may be established when a claimant has an impairment described in a listing, but

does not exhibit one or more of the specified criteria or the requisite severity.  20 CFR

§ 404.1526(b)(1)(i).  The claimant may establish equivalency by showing other findings related

to [his] impairment that are of at least equal medical significance to the required criteria."  20

CFR § 404.1526(b)(1)(ii).  This requires a claimant to present evidence and offer a theory as to

how his impairments in combination equal a listed impairment.  *Burch v. Barnhart*, 400 F3d 676,

683 (9th Cir 2005).

According to Young, Dr. Schleuning's February 23, 2005 letter implicitly found that his

combination of impairments equals Listing 2.07 because, after reviewing all of his mental and

physical impairments, it stated that he "definitely fits into this category" and is "significantly

impaired on the basis of his labyrinth abnormalities."  Tr. 327.

The ALJ apparently read Dr. Schleuning's opinion as supporting only subsection A of

Listing 2.07 and not as a finding of equivalency to both the A and B criteria of Listing 2.07.

Dr. Schleuning did not expressly identify other findings as being "of at least medical

significance" to Listing 2.07.  20 CFR § 404.1526(b)(1)(ii).  However, he did note that Young

experienced "secondary" symptoms from his vestibular disorder, such as loss of short term

memory, occasional confusion, and difficulty moving normally, as well as oscillopsia.  Tr. 304,

326. The issue is whether these "secondary" symptoms are sufficient for a finding of equivalency.

A finding that a claimant equals a listing at step three is reserved for the Commissioner. 20 CFR § 404.1527(e)(2). The ALJ, not the treating physician, is responsible for deciding the ultimate legal question of medical equivalence. SSR 96-6p, *4. That legal question requires a judgment that the medical findings equal a level of severity that the impairment is "severe enough to prevent a person from doing any gainful activity." 20 CFR § 404.1525 (a). The opinion of a medical expert or other physician or psychologist designated by the Commissioner is required for a finding that an impairment, or combination of impairments, equals a listing. SSR 96-6p, * 3. In that regard, the ALJ properly considered the opinions of State agency medical and psychological consultants, none of whom indicated that Young's combined impairments medical equaled the severity of any listing. Tr. 217-223, 226-37.

Furthermore, the ALJ evaluated Dr. Schleuning's opinion and found it did not indicate Young met or equaled Listing 2.07. Tr. 23. He acknowledged the "secondary" symptoms identified by Dr. Schleuning by finding them to be "severe" at step two in the sequential proceedings. Tr. 23. Thus, he considered all of them when determining whether, in combination, Young's impairments met or equaled a listing and also when conducting his RFC analysis before proceeding to steps four and five of the sequential analysis. In addition, Dr. Schleuning's statement that Young is "significantly impaired" is unclear. It may reasonably be interpreted to mean that a combination of Young's impairments result in listing-level severity, as contended by Young, but also could reasonably be interpreted to mean that Young was impaired, but not to the point that he equaled Listing 2.07, as read by the ALJ. If two

interpretations of the record are equally plausible, this court must defer to the ALJ's reading. *Magallanes*, 881 F2d at 750; *see also Batson*, 359 F3d at 1193.

Thus, the ALJ's analysis of Dr. Schleuning's opinion to conclude that Young did not meet or equal Listing 2.07 should be sustained.

### C.    Dr. Schleuning's Vocational Opinion

Young also contends that the ALJ erred by rejecting Dr. Schleuning's opinion in a June 2004 letter which summarized Young's treatment and, concluded:  "At this time I would consider him to be unemployable, although in the future perhaps some therapy or medication could relieve his complaints."  Tr. 304.  The ALJ noted this opinion in his findings, but also noted that a determination regarding a claimant's ability to perform work activities is a matter reserved for the Commissioner.  Tr. 20.  That statement is correct.

Besides, in his later opinion dated February 23, 2005, Dr. Schleuning did not opine that Young was unemployable, but stated only that Young was "unable to function in his capacity as a principal by the winter of 2003 " and "would not be able to supervise and manage the work pressure in his work setting with the symptoms that he described."  Tr. 327.  An inability to work as a principal does not mean equate to an inability to work at any job.

### D.    Conclusion

In summary, the record supports the ALJ's finding that Young did not meet or equal Listing 2.07.  The ALJ also properly rejected Dr. Schleuning's vocational opinion.  Thus, the ALJ did not err in his analysis of Dr. Schleuning's opinion.

///

///

III.    **Lay Witness Testimony**

Young contends that the ALJ erred by not giving any reason to reject the testimony of lay witness Donna Young. The ALJ's decision omits any discussion of Donna Young's testimony.

The ALJ has a duty to consider lay witness testimony. 20 CFR §§ 404.1513(d); 404.1545(a)(3); *Lewis v. Apfel*, 236 F3d 503, 511 (9th Cir 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F3d 915, 918-19 (9th Cir 1993). The ALJ may not reject such testimony without comment, but may reject lay testimony inconsistent with the medical evidence. *Nguyen v. Chater*, 100 F3d 1462, 1467 (9th Cir 1996); *Lewis*, 236 F3d at 512. If an ALJ rejects lay witness testimony entirely, he must give reasons germane to the witness. *Nguyen*, 100 F3d at 1467.

Omission of lay witness observations of a claimant in a work environment is not harmless. *Stout v. Comm'r of Soc. Sec. Admin.,* 454 F3d 1050, 1055-56 (9th Cir 2006). Young's wife, Donna Young, completed a third party statement in conjunction with his application. She stated that Young's daily activities include reading, playing music, and watching television, preparing their son for school, performing household chores, preparing dinner, and taking their son to school and activities. Tr. 139, 141, 143. He also completes weekly or biweekly shopping excursions. Tr. 142. She stated that since his disability began, Young can no longer concentrate or focus, is exhausted, and does not sleep well. Tr. 140, 143.

Describing her husband's condition, Donna Young wrote that his "balance is always an issue with any and all movement, concentration, and focus, light headedness and fatigue are all symptoms and conditions related" to her husband's impairment. Tr. 144. Asked how much time

Young requires to complete chores, she answered: "He works for 15 or 20 minutes, then takes a 15-20 minute break often times by sitting down and closing his eyes." Tr. 141. She also stated that he can walk "about 15 minutes" before needing rest and can resume walking after "10-15 minutes to re-group." Tr. 144. When asked how long her husband can pay attention, she wrote: "It just depends on how intense the symptoms are that particular day. . . 10-30 minutes on a good day." *Id.* Finally, she stated that her husband often writes down instructions he would previously complete by memory, that he gets along well with others, and that he handles stress "pretty well." *Id.*

Though Donna Young's statements describe her husband's daily activities in the home, these described limitations may correlate to an ability to function in the workplace. *See Orteza*, 50 F3d at 750. Silent omission of lay witness testimony regarding a claimant's workplace functioning is not harmless. *Stout*, 454 F3d at, 1055-56. That is particularly true here where the ALJ rejected Young's need to take frequent breaks when performing all activities, even simple tasks. Donna Young's testimony fully supports her husband's testimony in that regard. Thus, the ALJ erred by omitting an analysis of Donna Young's testimony.

## IV.    <u>Vocational Expert's Testimony</u>

The vocational expert ("VE") testified that if Young required 45 minutes of rest or sleep in the morning and afternoon, he would not be able to perform any work in the national economy. Tr. 373. The VE was not asked to consider how long Young must rest after completing a task or how long he can read before requiring rest.

In making a step five finding which includes non-exertional limitations, the ALJ is required to propound a hypothetical to the VE. *Tackett*, 189 F3d at 1102. This hypothetical

must be "based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations." *Osenbrock v. Apfel*, 240 F3d 1157, 1165 (9th Cir 2003). For the reasons above, the ALJ's credibility finding was inadequate. Should Young be found credible upon remand, additional VE testimony must be solicited incorporating any additional limitations stemming from a revised credibility determination.

**V**.      **Remand**

After finding that the ALJ erred, this court has discretion to remand for further proceedings or for immediate payment of benefits. *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen*, 876 F2d 759, 763 (9th Cir 1989). Thus, improperly rejected evidence should be credited as true and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman*, 211 F3d at 1178, citing *Smolen*, 80 F3d at 1292. However, where it is not clear the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion to credit the evidence or not. *Connett*, 340 F3d at 876.

Here, the ALJ improperly rejected Young's testimony and that of his wife. However, even if credited, this evidence does not clearly establish disability. Young stated that he has

difficulties "with the duration" or length of time he can read, as well as remembering and

comprehending what he reads.  Tr. 344, 356.  He becomes tired and fatigued after reading "too

long" and often falls asleep or requires "frequent breaks."  *Id.*  Young did not specify how long

he can read before requiring such rest or interruption, only that he required "frequent" breaks of

an unspecified length.  Tr. 357.  He also stated that he works in "short periods" of 15-20 minutes

and then takes a rest of an unspecified length.  Tr.  364.  He takes a nap of 30-45 minutes both in

the morning and afternoon.  Tr 366-67.  Young also testified that he suffers from other

significant symptoms, including vision difficulties associated with oscillphasia and fatigue

associated with ongoing dizziness, impaired balance and eyestrain.  Tr. 347.  Although his

lightheadedness remains unchanged since his December 2003 onset date, he no longer

experiences nausea and his fatigue decreased after he ceased working on that date.  Tr. 346, 348.

Finally, he testified that his symptoms interfere with his ability to concentrate on printed material

or conversation and that he feels depressed due to ongoing symptoms.  Tr. 349, 352.

 Further proceedings are necessary for the ALJ to properly evaluate this testimony.  In

particular, the ALJ should establish how long Young can read or work before requiring a break

and for how long he needs a break.  The ALJ must subsequently reassess Young's RFC

accordingly, and, if necessary, obtain additional VE testimony.

### **RECOMMENDATION**

This court finds that the Commissioner's decision that Young did not suffer from

disability and is not entitled to benefits under Title II of the Social Security Act is not based

upon correct legal standards and recommends that this case be REMANDED for a re-evaluation

of Young's credibility, an evaluation of the lay witness testimony, an RFC calculation including

any additional limitations established by that evidence, and VE testimony incorporating the revised RFC.

## <u>SCHEDULING ORDER</u>

Objections to the Findings and Recommendation, if any, are due by April 2, 2007.  If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

DATED this 16th day of March, 2007.

/s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

17 - FINDINGS AND RECOMMENDATION